**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL MACOLINO,** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **No. 18-1476** |
| | : | |
| **TOWNSHIP OF LOWER MORELAND,** et al., | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**<u>MEMORANDUM OPINION</u>**

**Goldberg, J.**                                                            **September 30, 2020**

Plaintiff Paul Macolino brings claims pursuant to 42 U.S.C. § 1983 and Pennsylvania state law, stemming from his alleged unlawful arrest for trespass by Defendant Officer Sean McCoy of the Lower Moreland Township Police Department and the ongoing property dispute between Plaintiff and his neighbor, Defendant Raymond Mullen.  Both Defendants have filed motions to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, I will grant in part and deny in part each Defendant's Motion to Dismiss.

## I.      <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff's two-count complaint asserts claims of false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983[1] and Pennsylvania state law.  Plaintiff seeks

---

[1]      Although Plaintiff appears to assert a § 1983 denial of due process claim based on the Fourteenth Amendment, he concedes that he only asserts claims based on the Fourth Amendment.  (Pl.'s Opp. to McCoy Mot. at 1 n.1.)  Therefore, any claim for denial of due process is dismissed.

compensatory and punitive damages[2] as well as attorneys' fees and costs.

The following facts, viewed in the light most favorable to Plaintiff, are taken from the

Amended Complaint:

- On October 12, 2010, Officer McCoy responded to a complaint made by Plaintiff regarding a dispute between Plaintiff and his neighbor, Mullen, about the boundary between their properties.  Upon arrival, Officer McCoy informed Plaintiff that "the police could not enforce the results of any survey" and "the property dispute did not warrant police involvement" as it was, in Officer McCoy's words, a "civil matter."  (Am. Compl. ¶¶ 10, 23.)

- On June 2, 2011, Plaintiff met with Officer McCoy in the Lower Moreland Township police station to report that Mullen had spray painted a line on what Plaintiff believed to be his property.  Officer McCoy explained that "any issues with their property line would need to be settled in court."  (Id. ¶ 24.)

- On July 12, 2011, Mullen reported to the Lower Moreland police that Plaintiff was trespassing on Mullen's property.  Mullen was informed that police involvement was not warranted as the property dispute constituted a civil rather than criminal issue.

- On October 4, 2011, Mullen again reported to the Lower Moreland police that Plaintiff was trespassing on Mullen's property and that Plaintiff was harassing Mullen.  The Lower Moreland police again told Mullen that his report concerned a civil rather than a criminal matter and therefore did not warrant police involvement.

- On December 21, 2011, the Chief of Police of the Lower Moreland Township Police Department sent Mullen a letter explaining that the boundary dispute between Mullen and Plaintiff did not warrant police involvement given that it was a civil rather than a criminal dispute. Plaintiff asserts that Officer McCoy knew about this letter and its contents.

- On July 27, 2013, Officer McCoy was called to Plaintiff's property in response to a complaint by Mullen.  Plaintiff was charged with criminal mischief as a result of Mullen's complaint.  The charges were later dismissed. Plaintiff alleges that both Officer McCoy and Mullen were informed by the adjudicating Magisterial District Justice that the charges were dismissed because the boundary dispute constituted a civil rather than criminal matter.

---

[2]     Defendant Officer McCoy seeks to dismiss Plaintiff's punitive damages claim, arguing that this relief is barred when asserted against a municipal employee in their official capacity.  "However, a police officer may be held liable in his individual capacity for punitive damages if the actions were motivated by 'evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  Mitros v. Cooke, 170 F. Supp. 2d 504, 508 (E.D. Pa. 2001) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  As discussed below, Plaintiff has plausibly pled that Officer McCoy recklessly disregarded the truth of the statements made in the Affidavit of Probable Cause.  Thus, at this stage of the case, I will deny Officer McCoy's motion as to Plaintiff's punitive damages claim.

- On July 12, 2014, Mullen again contacted the Lower Moreland police to report that Plaintiff had trespassed on his property. The police once again told Mullen that charges would not be filed against Plaintiff as the boundary dispute constituted a civil rather than criminal dispute. (Id.)

- On March 23, 2016, the date of the incident at issue, Defendant Mullen contacted the Lower Moreland police to report that Plaintiff was on Mullen's property, "putting things" on it. (Id. ¶ 17.) Plaintiff asserts that these allegations were false because he was not home when Mullen contacted the police.

- Officer McCoy, along with "Sergeant Scirrotto" of the Lower Moreland police, responded to Mullen's report. Plaintiff arrived at the scene shortly thereafter. According to Plaintiff, Officer McCoy "without reviewing any documentation including township plot plans or surveys, falsely claimed Plaintiff was standing on Defendant Mullen's property." (Id. ¶ 27.)

- Several weeks later, on or about April 13, 2016, Officer McCoy prepared an Affidavit of Probable Cause in response to the incident occurring on March 23, 2016.

- Plaintiff asserts that the following statements made in the Affidavit of Probable Cause were false: when police arrived at Mullen's house on March 23, 2016, Plaintiff was "acting belligerently and loud"; Plaintiff refused to remain on his side of the property line; Plaintiff refused to move back onto his side of the property line; Plaintiff stood on Mullen's side of the property line and taunted police; and Plaintiff "continued to harass" the police. (Id. ¶ 31.)

- Plaintiff alleges that Officer McCoy failed to include any of the aforementioned history between Plaintiff and Mullen regarding their recurring boundary dispute and the Lower Moreland Township Police Department's prior determinations that the dispute did not constitute a criminal matter.

- As a result of Officer McCoy's Affidavit of Probable Cause, a warrant was issued for Plaintiff's arrest.

- Plaintiff was forced to turn himself in to the Lower Moreland police to be fingerprinted and photographed at the police station.

- Plaintiff was forced to make three court appearances due to the arrest warrant and spend in excess of $16,000 in counsel fees.

- On August 23, 2016, the charges against Plaintiff were dismissed.

Based on these facts, Defendants Officer McCoy and Mullen have each moved to dismiss the Amended Complaint for failure to state a claim.

## II.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   Conclusory allegations do not suffice.   <u>Id.</u>   While it "does not impose a probability requirement at the pleading stage," plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under <u>Twombly</u> and <u>Iqbal</u>, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."   <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).   Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff."   <u>Id.</u> at 220.   When deciding a motion to dismiss, "'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'"   <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014) (quoting <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   <u>DISCUSSION</u>

### A.  Defendant Officer McCoy's Motion to Dismiss

As a result of the warrant for Plaintiff's arrest issued in connection with the incident on March 23, 2016, Plaintiff brings claims against Defendant Officer McCoy for false imprisonment,

malicious prosecution, and false arrest pursuant to 42 U.S.C. § 1983 and Pennsylvania tort law.

### 1. Section 1983 Claims Based on the Fourth Amendment Against Officer McCoy

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

The statute itself does not independently create substantive rights, but rather merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. 07-3172, 2008 WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008).  A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  42 U.S.C. § 1983.  In other words, a plaintiff alleging a § 1983 violation must demonstrate that: (1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes.  Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

Here, Plaintiff alleges that Officer McCoy, while acting under color of state law and under his apparent authority, deprived Plaintiff of the rights, privileges, and immunities granted to him as a citizen of the United States by the Fourth Amendment of the United States Constitution.

Defendant Officer McCoy seeks dismissal of Plaintiff's § 1983 Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution based on the following arguments: (1) there was probable cause to arrest Plaintiff for trespass; (2) Plaintiff has failed to adequately

allege a "seizure"; and (3) Officer McCoy is protected from this lawsuit due to qualified immunity. I address each of these arguments in turn below.

### i. *Probable Cause Under the Fourth Amendment*

In order to establish his § 1983 claims for false arrest, false imprisonment, and malicious prosecution, Plaintiff must show that Officer McCoy's actions were "unreasonable" in light of the surrounding circumstances.  Parker v. Wilson, No. 98-3531, 2000 WL 709484, *3 (E.D. Pa. May 30, 2000) (citing Brower v. Cnty. of Inyo, 489 U.S. 593, 595 (1989)).  A police officer's arrest of a citizen is unreasonable under the Fourth Amendment if the officer lacked probable cause to do so.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir.1995) (stating that "an arrest based on probable cause could not become the source of a [§ 1983] claim for false imprisonment"); Nimley v. Baerwald, No. 02-7417, 2004 WL 1171733, at *7 (E.D. Pa. May 26, 2004) (stating that, in a § 1983 action, the key element of a cause of action for unlawful arrest is that the law enforcement agent arrested the plaintiff without probable cause).

The United States Supreme Court has characterized probable cause as a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."  Illinois v. Gates, 462 U.S. 213, 232 (1983).  A showing of probable cause thus requires "proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense."  Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).  Although probable cause calls for more than mere suspicion, it does not mandate that the evidence at the time of the arrest be sufficient to prove guilt beyond a reasonable doubt.  Nimley, 2004 WL 1171733, at *7 (citing Warlick v. Cross, 969 F.2d 303, 306 (7th Cir. 1992); Orsatti v. N.J. State Police, 71 F.3d 480, 482–83 (3d Cir. 1995)).  Indeed, the ultimate finding of guilt or innocence, or even dismissal of charges arising out of an arrest and

detention has no bearing on whether the arrest was valid.  Pansy v. Preate, 870 F. Supp. 612, 617–18 (M.D. Pa. 1994) (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)), aff'd, 61 F.3d 896 (3d Cir. 1995).

Rather, "the proper inquiry is . . . whether the arresting officers had probable cause to believe the person arrested committed the offense."  Molenski v. Ross, No. 09-1111, 2010 WL 2766891, at *4 (E.D. Pa. July 12, 2010) (quotations omitted).  The test is an objective one based on the facts available to the officers "at the moment of arrest," rather than in hindsight.  Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).

Where an arresting officer arrests a person on a valid warrant, however, the proper focus of the probable cause analysis is more confined, as it is not a reviewing court's role to determine whether there was sufficient probable cause.  Rather, the court must simply "determine whether the affidavit provide[d] a sufficient basis for the decision the magistrate judge actually made."  United States v. Jones, 994 F.2d 1051, 1058 (3d Cir. 1993).

Thus, to plead a Fourth Amendment violation, a plaintiff must make factual allegations sufficient to establish (1) that "the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,'" and (2) that "those assertions or omissions were 'material, or necessary, to the finding of probable cause."  Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) (quotations omitted).

An assertion is made with reckless disregard when "the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported."  Id. at 698 (quotations omitted).  Omissions are made with reckless

disregard where "an officer withholds a fact in his ken that any reasonable person would have known . . . was the kind of thing the judge would wish to know."  Id. (quotations omitted).

In the Amended Complaint, Plaintiff identifies statements in the Affidavit of Probable Cause that were allegedly false, namely that (1) when police arrived at Plaintiff's home on March 23, 2016, Plaintiff was "acting belligerently and loud"; (2) Plaintiff refused to remain on his side of the property line between Plaintiff and Defendant Mullen; (3) Plaintiff refused to move back onto his side of the property line; (4) Plaintiff stood on Mullen's side of the property line and taunted police; and (5) Plaintiff "continued to harass" the police.  Plaintiff also alleges that Officer McCoy omitted from the Affidavit of Probable Cause multiple incidents regarding the property dispute between Defendant Mullen and Plaintiff in which the Lower Moreland Police Department and specifically Officer McCoy had been involved.  Plaintiff also asserts that on a number of occasions regarding these incidents Plaintiff and Mullen were told by the Lower Moreland Police Department and specifically Officer McCoy that their property dispute was a civil, not criminal matter, and did not warrant police involvement.  Plaintiff claims in the Amended Complaint that this alleged directive was also omitted from Officer McCoy's Affidavit of Probable Cause.

As alleged in the Amended Complaint, Plaintiff was charged with two counts of trespass. The elements are as follows:

> (b) Defiant trespasser.--
>> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>>> (i) actual communication to the actor;
>>> (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders;

18 Pa. Cons. Stat. § 3503(b).  Therefore, whether Plaintiff was licensed or privileged to remain on the property at issue is material to the crime of trespass and the magistrate judge's finding of probable cause in this case.

For two reasons I find that Plaintiff has plausibly pled that Officer McCoy's Affidavit of Probable Cause was an insufficient basis for the magistrate judge's decision to issue the arrest warrant.  First, regarding Officer McCoy's alleged false statements, I must take as true the allegation that all statements in the Affidavit of Probable Cause accusing Plaintiff of standing on Defendant Mullen's property are false.  I must also take as true the allegation that Officer McCoy knew the property line between Mullen and Plaintiff's home had been in dispute for several years and that, without consulting any surveys or other records indicating who owned the property, Officer McCoy concluded, based solely on Defendant Mullen's report of trespass, that Plaintiff was standing on Mullen's property.  Based on these allegations, it is plausible that Officer McCoy lacked knowledge as to which neighbor owned the property upon which Plaintiff was standing or, at least, knew that Mullen and Plaintiff disputed the boundary line between their properties.  Thus, I find that Plaintiff has plausibly pled that Officer McCoy had obvious reasons to doubt the accuracy of his statement that Plaintiff was on Mullen's property, and not his own, and, therefore, with reckless disregard for the truth, represented in the Affidavit of Probable Cause that Plaintiff was trespassing on Mullen's property.  See Andrews, 853 F.3d at 698.

Second, regarding Officer McCoy's alleged omissions, I must accept as true that the property dispute history involving Plaintiff, Mullen, the Lower Moreland Police Department, and Officer McCoy was, in fact, omitted from the Affidavit of Probable Cause.  Thus, I find that Officer McCoy's alleged failure to identify that there was a dispute as to who owned the property at issue in the March 23, 2016 incident, a fact which Officer McCoy knew based on his personal history

with these parties regarding this specific dispute, is information that the judge reviewing the Affidavit of Probable Cause would have wished to know.

For these reasons, I conclude that Plaintiff has plausibly pled the probable cause element of his Fourth Amendment claims against Officer McCoy.

### ii.  Seizure Under the Fourth Amendment

In order to survive dismissal of his § 1983 claims for false arrest, false imprisonment, and malicious prosecution, Plaintiff must also plausibly show that Officer McCoy's actions constituted a "search" or "seizure" within the meaning of the Fourth Amendment.  Parker,  2000 WL 709484, *3 (citing Brower, 489 U.S. at 595).   A seizure is a restraint of liberty by show of force or authority, see Florida v. Bostick, 501 U.S. 429, 434 (1991), and occurs "when a reasonable person in the position of the plaintiff would not feel free to decline a request of a government agent or to terminate an encounter with a government agent."  Brown v. Commonwealth, No. 99-4901, 2000 WL 562743, *4 (E.D. Pa. May 8, 2000).

Officer McCoy argues that Plaintiff's Amended Complaint is deficient regarding the Fourth Amendment's seizure requirement because "Plaintiff cannot dispute that he had no bail set, was indisputably never required to contact pretrial services, never had his right to interstate travel restricted and was never handcuffed or incarcerated . . . .  Plaintiff presented himself to the Court, and then left."  (Def. McCoy's Mot. at 4.)  Plaintiff responds that he has sufficiently alleged a "seizure" because, as a result of receiving the arrest warrant, he (1) was forced to report to the police station, (2) was fingerprinted and photographed, (3) made three court appearances, and (4) spent in excess of $16,000 in counsel fees.

I address below the issue of seizure as it applies to each of Plaintiff's § 1983 claims for false arrest, false imprisonment, and malicious prosecution.

10

a.   Seizure for Purposes of False Arrest

First, I find that Plaintiff has sufficiently alleged a seizure for purposes of his § 1983 false arrest claim.   In Albright v. Oliver, the United States Supreme Court suggested that a civil claimant's surrender to the state's show of authority through an arrest warrant constitutes a seizure for purposes of the Fourth Amendment.   See Albright v. Oliver, 510 U.S. 266, 271 (1994).   This reasoning in Albright was not essential to the case's outcome and is, therefore, non-binding. However, other circuit courts, relying on the language in Albright, have found that an individual's voluntary surrender to an arrest warrant constitutes a seizure under the Fourth Amendment.[3]   The United States Court of Appeals for the Third Circuit has not yet answered this particular question. Yet, the Third Circuit has stated: "[g]iven that the Supreme Court's decision in Albright does not determine conclusively what kinds of Fourth Amendment violations would be actionable under section 1983, we would remain closest to our own precedent by adopting a broad approach in considering what constitutes a seizure."   See Gallo v. City of Phila., 161 F.3d 217, 224 (3d Cir. 1998).

Here, Plaintiff has pled that he received a warrant for his arrest and voluntarily surrendered. In other words, Plaintiff alleges that he responded to the state's show of authority through an arrest warrant and reported to the station.   I conclude that Plaintiff, after receiving a warrant for his arrest, has plausibly shown that he would not feel free to ignore it.   There would be no question of seizure if Plaintiff had ignored the arrest warrant and was later taken into custody in a subsequent interaction with police due to the active warrant for his arrest.   Prohibiting an individual from bringing a claim for false arrest simply because he chose to voluntarily surrender pursuant to the

---

[3]      McLin v. Ard, 866 F.3d 682, 691–694 (5th Cir. 2017); Goad v. Town of Meeker, 654 F. App'x 916, 921 (10th Cir. 2016); Cumminsky v. Mines, 248 F. App'x 962, 964, 965 n.1 (10th Cir. 2007); Whiting v. Traylor, 85 F.3d 581, 583, 583 n.6 (11th Cir. 1996), abrogation on different grounds recognized by, Laskar v. Hurd, No. 19-11719, 2020 WL 5086395 (11th Cir. Aug. 28, 2020).

state's show of authority through an arrest warrant, instead of waiting to be arrested, would promote an absurd result, especially considering that Plaintiff has plausibly shown that the arrest warrant lacked a sufficient basis. Therefore, I will deny Defendant Officer McCoy's motion on these grounds.

b. Seizure for Purposes of False Imprisonment

Turning to the issue of seizure as it relates to Plaintiff's § 1983 false imprisonment claim, I find, based on the allegations in the Amended Complaint, that Plaintiff has not sufficiently alleged seizure. "While courts recognize that false arrest and false imprisonment claims under the Fourth Amendment are nearly identical claims and often analyzed together, they remain distinct causes of action." Dixon v. Schweizer, No. 18-5403, 2020 WL 4600187, at *8 (E.D. Pa. Aug. 11, 2020) (internal quotation marks omitted) (citations omitted). Though "false arrest and false imprisonment overlap" where the "former is a species of the latter," Wallace v. Kato, 549 U.S. 384, 388 (2007), these claims differ as to the nature of the relevant misconduct. Unlike a claim of false arrest that requires only an arrest made without probable cause, "the arrestee has a claim under § 1983 for false imprisonment based on a **detention** pursuant to that arrest." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (emphasis added). "Detention" in the legal context is defined by the act of confinement or holding a person in custody. See Black's Law Dictionary (11th ed. 2019). Typically, the distinction between "seizure" for purposes of a false arrest and false imprisonment claim is less consequential where the "quintessential 'seizure of the person'" is often evident through facts alleging "the mere grasping or application of physical force with lawful authority." California v. Hodari D., 499 U.S. 621, 624 (1991).

Here, however, Plaintiff does not allege in the Amended Complaint an application of physical force. The seizure alleged in support of Plaintiff's false imprisonment claim is his

voluntary surrender to the police station, where he was fingerprinted and photographed.  There is no allegation that Plaintiff was handcuffed, confined, held in custody, or otherwise prohibited from leaving the police station while he was being fingerprinted and photographed.  After Plaintiff left the station, he was required only to appear in court, which alone does not constitute a Fourth Amendment seizure.  See DiBella v. Borough of Beachwood, 407 F.3 599, 603 (3d Cir. 2005).  I also note that Plaintiff's opposition is silent on the issue of seizure as it relates to his false imprisonment claim.  Plaintiff argues only that "there is a difference in what constitutes a seizure for purposes of a false arrest claim as opposed to a malicious prosecution claim."  (Pl.'s Opp. to McCoy Mot. at 6–7.)  Thus, for the foregoing reasons, I will grant Defendant Officer McCoy's motion on these grounds and dismiss Plaintiff's § 1983 false imprisonment claim.

### c.  Seizure for Purposes of Malicious Prosecution

Finally, regarding Plaintiff's § 1983 malicious prosecution claim, I also find that, based on the allegations in the Amended Complaint, Plaintiff has not sufficiently alleged seizure.  Although they are related and often asserted together, "a claim of malicious prosecution is a slightly different species of claim from claims of false arrest and imprisonment."  Garland v. Bonds, No. 19-1874, 2020 WL 2126330, at *8 (E.D. Pa. May 5, 2020).  "Malicious prosecution differs from false arrest inasmuch as [a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more."  Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (internal quotation marks omitted).

The Third Circuit has also explicitly addressed the effect of Albright on malicious prosecution claims under § 1983.  See Gallo, 161 F.3d at 222.  In Gallo v. City of Philadelphia, the Third Circuit, interpreting Albright, found that "prosecution without probable cause [was] not, in and of itself, a constitutional tort."  Id.  "Instead, the constitutional violation is the deprivation

of liberty accompanying the prosecution. . . . Because under the common law, the tort of malicious prosecution concerns perversion of proper legal procedures, [a plaintiff] must show that he suffered a seizure as a consequence of a legal proceeding."  Id. (internal quotation marks omitted); see also DiBella, 407 F.3d at 601 (reasoning that that the type of constitutional injury that a § 1983 malicious prosecution claim based on the Fourth Amendment is "intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself.").  The court in Gallo determined that, based on the combination of the following restrictions imposed on the plaintiff, he had alleged a sufficient seizure for purposes of a § 1983 malicious prosecution claim:

> [A] federal grand jury indicted Gallo on two counts of mail fraud, one count of malicious destruction of a building by fire, and one count of making false statements to obtain a loan.  After responding to a notice, Gallo was arraigned on the charges on August 4, 1994, and was released on a $10,000 personal recognizance bond.  He never was arrested, detained, or handcuffed.  As a condition of his release, the court prohibited Gallo from traveling beyond New Jersey and Pennsylvania and instructed him to contact Pretrial Services weekly. These restrictions remained in effect through Gallo's trial in March 1995, a period of over eight months from when the court imposed them.

Id. at 219, 225.

Here, apart from a few court appearances, there is no allegation in the Amended Complaint that bail was set or that Plaintiff was required to pay a bond, that Plaintiff was required to contact pretrial services or was subject to pretrial conditions, that Plaintiff's right to interstate travel was restricted, or that he was incarcerated.  Thus, Plaintiff has failed to sufficiently plead a deprivation of liberty accompanying his prosecution for trespass.  See DiBella, 407 F.3d at 603 (finding that the plaintiffs had failed to state a claim for malicious prosecution under § 1983 because they "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial

14

restrictions.").  I will, therefore, grant Defendant Officer McCoy's motion as to Plaintiff's § 1983 malicious prosecution claim.

### 2.  State Law Claims Against Officer McCoy

Plaintiff also brings state law tort claims for false arrest, false imprisonment, and malicious prosecution against Defendant Officer McCoy.

First, Plaintiff's state law claim for false arrest is duplicative of his false imprisonment claim.  "Under Pennsylvania law, false arrest and false imprisonment are essentially the same actions."  Dixon v. Schweizer, No. 18-5403, 2020 WL 4600187, at *7 (E.D. Pa. Aug. 11, 2020) (internal quotation marks omitted) (citing Watson v. Witmer, 183 F. Supp. 3d 607, 617 (M.D. Pa. 2016); Pellegrino v. U.S. Transp. Sec. Admin., 855 F. Supp. 2d 343, 357 (E.D. Pa. 2012)).  Courts have determined that "a false arrest is an alternative means of establishing liability for false imprisonment but is not itself a tort in the sense of being an independent source of liability."  Id. (internal quotation marks omitted) (citing Cerami v. Blake, No. 92-4358, 1993 WL 21011, at *6 (E.D. Pa. Jan. 20, 1993)); see also Osgood v. Borough of Shamokin Dam, 420 A.2d 613, 614 (Pa. Super. Ct. 1980) (explaining that "false arrest" is "synonymous with false imprisonment where a defendant purports to act for the purpose of securing the administration of the law without actual legal justification").

There are two elements of a false imprisonment claim under Pennsylvania law: (1) the detention of another person, and (2) the unlawfulness of such detention.  Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994).  Generally, to establish liability for false imprisonment, the plaintiff has to prove that (1) Defendant acted with the intent to confine Plaintiff within boundaries fixed by him; (2) Defendant's act directly or indirectly resulted in such confinement; and (3) Plaintiff was conscious of this confinement or was harmed by it. Pennoyer v. Marriott Hotel Servs., Inc., 324 F. Supp. 2d 614, 619–620 (E.D. Pa. 2004) (citing

Gagliardi v. Lynn, 285 A.2d 109, 111 n. 2 (Pa. 1971)).  "Confinement may be effected by physical barriers or physical force, by submission to a threat to apply physical force, or by taking a person into custody under an asserted legal authority."  Id. at 620 (citing Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 541 (E.D. Pa. 1982)).

Although, as discussed above, I find that Plaintiff has satisfied the probable cause or unlawfulness element of a false imprisonment claim, Plaintiff has failed to sufficiently allege a detention or confinement as contemplated by Pennsylvania law.  Therefore, I will grant Defendant Officer McCoy's motion as to Plaintiff's state law false arrest and false imprisonment claims.

Regarding Plaintiff's state law malicious prosecution claim, he must plausibly show (1) the institution of proceedings against him without probable cause and with malice and (2) the proceedings were terminated in Plaintiff's favor.  Turrano v. Hunt, 631 A.2d 822, 824 (Pa. Commw. Ct. 1993).  "The question of the existence of malice is always a question of fact exclusively for the jury."  See, e.g., Hugee v. Pa. R. Co., 101 A.2d 740, 743 (Pa. 1954).  Malice has been defined as "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose."  Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).  However, "[l]egal malice is not limited to motives of hatred or ill will but may consist of defendant's reckless and oppressive disregard of plaintiff's rights."  Id. at 1503.  "Malice may also be inferred from want of probable cause."  Hugee, 101 A.2d at 743.

Here, unlike Plaintiff's § 1983 malicious prosecution claim, the Pennsylvania common law tort of malicious prosecution does not require a significant deprivation of liberty.  As discussed above, Plaintiff has plausibly pled an insufficient basis for the arrest warrant due to Defendant Officer McCoy's allegedly reckless disregard for the truth of the statements made in the Affidavit of Probable Cause.  Therefore, I find that Plaintiff's allegations plausibly support the inference of

16

malice.  Defendant Officer McCoy's motion will be denied as to Plaintiff's state law malicious prosecution claim.

### 3. Qualified Immunity

Finally, Defendant Officer McCoy argues that he is protected from this lawsuit by qualified immunity.  State officials performing discretionary acts enjoy "qualified immunity" from civil damages in § 1983 causes of action when their conduct does not violate "clearly established" statutory or constitutional rights of which a "reasonable person" would have been aware at the time the incident occurred.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009); Kelly v. Borough of Carlisle, 544 Fed. App'x 129, 133–34 (3d Cir. 2013).  "Qualified immunity is immunity from suit and should be resolved as early as possible."  Docherty v. Cape May Cnty., No. 15-8785, 2017 WL 2819963, at *6 (D.N.J. June 29, 2017).  The Third Circuit has stated that, at the pleading stage, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  Thomas v. Indep. Twp., 463 F.3d 285, 291 (3d Cir. 2006) (citation omitted).  "The burden of establishing qualified immunity falls to the official claiming it as a defense."  Burns v. PA Dept. of Corr., 642 F.3d 163, 176 (3d Cir. 2011).

First, I note that the arguments in Defendant Officer McCoy's motion regarding qualified immunity pertain primarily to a retaliatory arrest claim under the First Amendment.  Such a claim is not before me.  Instead, I must address the question of qualified immunity as it concerns Plaintiff's § 1983 false arrest claim based on the Fourth Amendment.  This claim, which I have found to be plausibly pled, invokes a right clearly established in Franks v. Delaware, 438 U.S. 154, 155–156 (1978).  In Franks v. Delaware, the Supreme Court of the United States held that a warrant

is void if an affiant includes false statements made with reckless disregard for the truth in the warrant affidavit that are found to be, by a preponderance of the evidence, necessary to the magistrate judge's finding of probable cause.  Id.; Herring v. U.S., 555 U.S. 135, 145 (2009) ("In Franks, we held that . . . the Constitution allowed defendants, in some circumstances, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant, even after the warrant had issued.  If those false statements were necessary to the Magistrate Judge's probable-cause determination, the warrant would be voided." (internal quotation marks omitted) (citations omitted)).  I conclude that this right, having been clearly established since the 1970s, would have been known by a reasonable person at the time of the incident in this case.  Thus, Defendant Officer McCoy has failed to meet his burden of establishing a qualified immunity defense.  I will deny this defense without prejudice to Defendant Officer McCoy re-raising it at the summary judgment stage if discovery reveals relevant, admissible evidence.

**B.  Defendant Mullen's Motion to Dismiss**

Plaintiff brings claims of false arrest, false imprisonment, and malicious prosecution pursuant to § 1983 and Pennsylvania state law against Defendant Mullen.

**1.  Section 1983 Claims Against Mullen**

Defendant Mullen first argues that all federal claims against him must be dismissed because Plaintiff's Amended Complaint fails to establish that Defendant Mullen acted under color of state law.  Plaintiff responds that Defendant Mullen acted pursuant to a conspiracy with Defendant Officer McCoy to violate Plaintiff's rights.

I agree with Defendant Mullen's position.  In order to hold a private individual liable under § 1983, the plaintiff must prove that the private person has exercised powers that are traditionally the exclusive prerogative of the state; (2) the private party has acted in concert with state officials; or (3) the state has so far insinuated itself into a position of interdependence with the acting party

that it must be recognized as a joint participant in the challenged activity.  Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).  To establish the "requisite level of joint participation and collaboration," Plaintiff must plausibly "aver the existence of a pre-arranged plan between the police and [Defendant Mullen] by which the police substituted the judgment of [Defendant Mullen] for their own official authority."  Boyer v. Mohring, 994 F. Supp. 2d 649, 657 (E.D. Pa. 2014) (quoting Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir. 1984)).  "[T]he critical issue . . . is whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state."  Cruz, 727 F.2d at 82.

The mere act of reporting a concern to law enforcement does not suffice in establishing concerted action for purposes of § 1983 liability.  See Retzler v. McCauley, No. 19-1800, 2019 WL 5290802, at *3 (E.D. Pa. Oct. 18, 2019) ("Merely making complaints to municipal officials about an alleged nuisance does not convert a private person into a state actor subject to liability for constitutional violations under § 1983.").  Moreover, "providing false information to the police—even deliberately—does not transform a private party into a state actor."  Yoast v. Pottstown Borough, 437 F. Supp. 3d 403, 420 (E.D. Pa. 2020).

Here, even taking as true Plaintiff's allegation that both Defendant Mullen and Defendant Officer McCoy knew that the property dispute was a civil matter, Plaintiff has alleged no facts to support an agreement or pre-arranged plan between Mullen and Officer McCoy to violate Plaintiff's constitutional rights.  Thus, I will dismiss all federal claims against Defendant Mullen.

### 2.  State Law Claims Against Mullen

Plaintiff also asserts state law tort claims for false arrest, false imprisonment, and malicious prosecution against Defendant Mullen.

For the reasons discussed above, I find that Plaintiff's false arrest claim against Mullen is duplicative of his false imprisonment claim and is thus dismissed.  See Dixon, 2020 WL 4600187,

19

at *7.  In addition, because Plaintiff has failed to sufficiently allege that he was detained, Plaintiff's state law false imprisonment claim against Defendant Mullen is also dismissed.

Finally, turning to Plaintiff's state law malicious prosecution claim against Defendant Mullen, I find that Plaintiff's Amended Complaint is sufficiently pled as to this claim. A private individual may be subject to liability for malicious prosecution if (a) he initiates or procures the institution of criminal proceedings without probable cause and primarily for a purpose other than that of bringing the offender to justice, and (b) the proceedings have terminated in favor of the accused.  Bradley v. General Acc. Ins. Co., 778 A.2d 707, 710 (Pa. Super. Ct. 2001) (internal quotation marks omitted).

The law in Pennsylvania on malicious prosecution "has developed to a large extent based upon the Restatement (Second) of Torts":

> We refer to Section 653, comment g, of the Restatement (Second) of Torts as a guide to determining when a private individual can be responsible for initiating a criminal proceeding by providing statements to the police or law enforcement authorities:
> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor

in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

Thus, comment g distinguishes between situations in which a private individual merely provides information to an official who exercising discretion, may initiate charges, and those in which a private individual either provides knowingly false statements to an official or directs or pressures an official to initiate charges, thereby making the officer's intelligent use of discretion impossible.

Id. at 710–711 (citations omitted) (internal quotation marks omitted).

Here, Plaintiff alleges that Defendant Mullen reported to the police that Plaintiff was on Mullen's property putting things on it and that Defendant Mullen knew this information to be false because Plaintiff was not at home at the time Mullen made the report to police. Because I must resolve all reasonable inferences in favor of Plaintiff, I find that these allegations plausibly support Plaintiff's claim that Defendant Mullen provided information to police that he knew was untrue. Therefore, I will deny Defendant Mullen's motion as to Plaintiff's state law malicious prosecution claim.[4]

IV.    **CONCLUSION**

For the foregoing reasons, I will grant Defendant Officer McCoy's Motion to Dismiss regarding Plaintiff's § 1983 false imprisonment, malicious prosecution, and denial of due process claims and Plaintiff's state law false arrest and false imprisonment claims. I will also deny

---

[4]    Although all federal claims have been dismissed against Defendant Mullen, I will exercise supplemental jurisdiction over the remaining state law claim against Mullen because that claim is so related to the remaining claims against Defendant Officer McCoy that it forms part of the same case or controversy. 28 U.S.C. Sec. 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.").

Defendant Officer McCoy's motion regarding Plaintiff's § 1983 false arrest claim and state law malicious prosecution claim as well as Plaintiff's claim for punitive damages.

Defendant Mullen's Motion to Dismiss will be granted regarding all § 1983 claims and Plaintiff's state law false arrest and false imprisonment claims.  I will also deny Defendant Mullen's motion as to Plaintiff's state law malicious prosecution claim.

An appropriate Order follows.