IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL MACOLINO, | |
| *Plaintiff*, | Civil Action |
| v. | No. 18-cv-1476 |
| SEAN MCCOY *et al.*, | |
| *Defendants*. | |

MEMORANDUM OPINION

GOLDBERG, J.                                                                                            April 22, 2022

      This lawsuit stems from a long-running dispute between two neighbors over the boundary between their respective properties. Plaintiff Paul Macolino ("Macolino") brings a claim for false arrest under 42 U.S.C. § 1983 and claims under Pennsylvania common law for malicious prosecution related to his April 2016 arrest for trespassing on his neighbor's property. Before me are motions for summary judgment filed on behalf of all Defendants. For the reasons that follow, Defendants' Motions will be granted.

**I.**     **FACTS**

      The following facts are taken in the light most favorable to Macolino as the party opposing summary judgment. These facts are undisputed except where noted.

    **A.**     **Background: Macolino and Mullen's Property Dispute**

      Macolino and his neighbor, Defendant Raymond Mullen ("Mullen"), have had an ongoing dispute over the boundary between their respective properties. (McCoy's Statement of Undisputed Facts ("McCoy Facts") ¶ 1.) Since at least 2010, the two neighbors have repeatedly called the

1

Lower Moreland Township Police over trees, posts, landscaping, and a shed in the disputed strip of land. Initially, the Police declined to involve themselves and informed the neighbors that the boundary dispute was a civil matter that would have to be settled in court. (Macolino's Exs. C-G.)

In 2013, Mullen obtained a professional survey of his property. The surveyor placed concrete markers in the yard to mark the boundary. Macolino did not obtain his own survey. (McCoy Facts ¶¶ 2-9, 11.)

In August of 2013, the Lower Moreland Township Police broke their pattern of noninvolvement and charged Macolino with criminal mischief for allegedly trimming Mullen's trees in the disputed area. A judge dismissed the charges. The judge found that the dispute was a civil matter. (Macolino's Ex. I; McCoy Tr. 62-63.)

In September of 2014, the Police contacted the Montgomery County District Attorney's Office in regard to another incident of alleged tree-trimming. The District Attorney's Office also determined that it was a civil matter that would not be prosecuted. (Macolino's Ex. J.)

    **B.**    **The Events of March 23, 2016**

On March 23, 2016, Lower Moreland Township Police responded yet again to Mullen's complaints of Macolino trespassing on his property. Much of what occurred during that interaction is disputed, but the parties agree on these facts:

When then-Sergeant David Scirrotto arrived first at the properties, Macolino was not home. Scirrotto and Mullen were standing outside talking when Macolino showed up. Defendant Sean McCoy ("McCoy"), a police officer, arrived shortly thereafter. (McCoy Facts ¶¶ 17-18, 26.) During the ensuing interaction, McCoy told Macolino to stay on Macolino's side of Mullen's concrete survey markers. Macolino refused, and crossed over the line onto what the survey indicated was Mullen's property. (Id. ¶¶ 9, 28-29.)

### C. Macolino's Arrest and Prosecution

Following the parties' interaction on March 23, 2016, McCoy swore out an affidavit for Macolino's arrest. (Macolino's Ex. B.) A warrant was issued and Macolino was charged with defiant trespassing under 18 Pa. Con. Stat. § 3503(b). This charge was ultimately dismissed. (McCoy Facts ¶¶ 33-34, 41.)

The warrant affidavit set out the following facts that Macolino does not dispute:

- "Mullen hired a surveyor to survey the property and install concrete monuments marking the corner of the property in both the rear corner and front corner at Packard Ave, along the border he shares with Macolino."

- On March 23, 2016, McCoy responded to Mullen's address.

- While McCoy was at Mullen's property, Macolino was "advised that he needed to stay on his own property or he may be cited for trespassing."

- Macolino then "stood on Mullen's side of the line."

The warrant affidavit also contained facts that Macolino contends were false:

- The warrant affidavit stated that McCoy "responded to [Mullen's address] for the report of a neighbor dispute in progress." Macolino argues there was no dispute "in progress" because Macolino was not home when Mullen made the call. (Scirrotto Tr. 17.)

- The warrant affidavit stated that "[t]he caller reported that his neighbor was on his property, putting things on his property." Macolino again notes that he was not home when Mullen made the call so "the caller" could not have stated that Macolino was on his property. Macolino also asserts that Mullen did not tell the 9-1-1 operator that "Macolino was throwing things on [his] yard." (Mullen Tr. 35.)

- The warrant affidavit stated that Macolino "pulled up the stake that was placed in the hole at the site of the marker, and put it on the ground." Macolino denies pulling up any stakes. (Macolino Tr. 30.)

- The warrant affidavit stated that Macolino "repeatedly got very close to Sgt Scirrotto and told him to get off his property." Macolino denies doing this. (Macolino Tr. 129.)

- The warrant affidavit stated that Macolino "began acting belligerently." Macolino testified that he did not act belligerently. (Macolino Tr. 129.)

In addition, Macolino claims that the warrant affidavit omitted facts that should have been included:

3

- The warrant affidavit should have stated that police had repeatedly told Macolino and Mullen that the boundary dispute was a civil matter.

- The warrant affidavit did not disclose that McCoy had filed a previous criminal complaint against Macolino for cutting Mullen's trees that was dismissed because the dispute was a civil matter.

- The warrant affidavit did not divulge that the Montgomery County District Attorney's Office had declined to prosecute a case related to the boundary dispute after determining it was a civil matter.

## II.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is evidence from which a reasonable factfinder could return a verdict for the non-moving party, and a dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to

make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

### III.  DISCUSSION

Macolino brings claims against McCoy for false arrest under 42 U.S.C. § 1983 and for malicious prosecution under Pennsylvania common law. Macolino's claim against Mullen is for malicious prosecution. These claims are discussed below.

### A.  § 1983 False Arrest Claim Against McCoy

Section 1983 of the Civil Rights Act does not create substantive rights but provides a cause of action to enforce rights otherwise provided by federal law. Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004). In the present case, Macolino contends McCoy violated his Fourth and Fourteenth Amendment right to be free from unreasonable seizures.

Macolino was arrested pursuant to a warrant. To make out a claim for false arrest based on a warrant, a plaintiff must show two things:

(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and

(2) that such statements or omissions are material, or necessary, to the finding of probable cause.

Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quotation marks omitted, line breaks added).[1]

"To determine whether information was recklessly omitted, [a court] ask[s] whether the officer withheld a fact [within his knowledge] that any reasonable person would have known … was the kind of thing the judge would wish to know." Dempsey v. Bucknell Univ., 834 F.3d 457, 470 (3d Cir. 2016) (quotation marks and alterations omitted). While relevant information must generally be included in a warrant affidavit, "courts … cannot demand that police officers relate the entire history of events leading up to a warrant application." Id. at 471 (quotation marks omitted).

Once it has been determined that the warrant affidavit contained deliberate or reckless false statements or omissions, the second step asks whether those defects were "material, or necessary, to the finding of probable cause." Wilson, 212 F.3d at 786-87. To answer this question, the court should "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Id. at 789. In so doing, the court should "perform a word-by-word reconstruction of the affidavit." Dempsey, 834 F.3d at 470. That is, the court should recite, in its opinion, the text that would have been in the affidavit had the false facts been omitted and omissions supplied. See id. at 475-76.

Following reconstruction of the corrected affidavit, the question becomes whether such an affidavit would have created probable cause to issue the warrant. See id. at 477. "Probable cause

---

[1] The parties do not discuss whether the invalidity of the warrant would be sufficient for Macolino to make out a claim. See United States v. Miles, 468 F.2d 482, 487 (3d Cir. 1972) (noting situations in which a valid warrant is not required for an arrest). Because Macolino argues in his brief that the Wilson standard applies, and McCoy does not dispute this in his reply brief, I will assume, for purposes of summary judgment, that Plaintiff would have a viable § 1983 claim if he could meet the Wilson standard.

to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Wilson, 212 F.3d at 789. In making that assessment, both exculpatory and inculpatory evidence must be considered. Id. at 790.

"[A] determination [of probable cause] is necessarily fact-intensive, and it will usually be appropriate for a jury to determine whether probable cause existed." Dempsey, 834 F.3d at 468. "Nevertheless, summary judgment may be granted on the question of probable cause if a court concludes that the evidence, viewed most favorably to the nonmoving party, reasonably would not support a contrary factual finding." Id. (alterations and quotation marks omitted). The question to be answered is whether "no reasonable jury could find facts that would lead to the conclusion that the reconstructed affidavit lacked probable cause." Id. at 477 (quotation marks omitted).

The statements in McCoy's warrant affidavit that Macolino contends are false relate to the interaction among Macolino, Mullen, Scirrotto, and McCoy on March 23, 2016. A jury could credit Macolino's version of these events. In addition, because McCoy was present and aware of these facts, a jury could find that the corresponding statements in the affidavit were knowingly false. For purposes of summary judgment, therefore, Macolino has met his burden to show that these statements should be excised from the corrected affidavit.

The facts that Macolino contends were falsely omitted from the affidavit must be examined next. The omitted facts, which involve the history of the dispute between Macolino and Mullen, do not directly relate to whether Macolino trespassed on Mullen's property. To show that these facts were falsely omitted, Macolino must demonstrate that "any reasonable person would have known" that these facts were "the kind of thing the judge would wish to know." Dempsey, 834 F.3d at 470. Nevertheless, because I find the analysis of probable cause to be more straightforward,

7

I will give Macolino the benefit of the doubt and assume, for purposes of the present Motions, that McCoy should have included these facts in the warrant affidavit.

Other facts in the affidavit are not disputed. Critically, Macolino does not dispute that he stepped over the line indicated by Mullen's survey monuments, that McCoy told Macolino to remain on Macolino's side of the line, and that Macolino refused to do so. These facts therefore remain in the corrected affidavit.

Thus reconstructed to include Macolino's facts (shown underlined) and exclude his contested facts, the affidavit reads as follows:

> On 3/23/2016 at approximately 1755hrs, I responded to 2227 Packard Ave for the report of a neighbor dispute ~~in progress~~. ~~The caller reported that his neighbor was on his property, putting things on his property.~~ This address is known to Lower Moreland Police as half of an ongoing property dispute between Ray Mullen, at 2227 Packard, and Paul Macolino, at 2239 Packard. The dispute over the property line has been going on for years.
>
> <u>On multiple occasions, our office has informed Mullen and Macolino that the dispute was a civil matter that the police could not resolve. The Montgomery County District Attorney's Office has also taken the position that the dispute is a civil matter and that they would not prosecute a case related to the boundary dispute. In addition, a prior charge for criminal mischief related to Macolino cutting trees in the disputed area was dismissed, with the judge finding that it was a civil matter.</u>
>
> Upon arrival, Sgt Scirrotto made contact with Ray Mullen, who began explaining the reason he called. While he was speaking with Mullen, Macolino came out of his house and approached them~~, and began acting belligerently~~. He ~~was being loud with Sgt Scirrotto, and~~ was refusing to remain on his side of ~~the property~~ <u>Mullen's survey</u> line. Macolino continually disputes the line as it was understood by Police based on the survey Mullen had conducted last year. Mullen hired a surveyor to survey the property and install concrete monuments marking the corner of the property in both the rear corner and front corner at Packard Ave, along the border he shares with Macolino. Macolino refused to acknowledge the markers, and claimed that a survey was never done, and that Mullen installed the monuments himself. ~~He attempted to kick and dig at the monument in the rear with the stake that had been used to mark its location.~~ He was advised that tampering with the monument was a <u>crime</u> ~~misdemeanor~~, and that if he altered or removed it, he would be charged. He still refused to acknowledge that this was the true location of the property line, and insisted that his property extended feet further toward Mullen's home. He was advised multiple times that unless he provided a survey that

contradicts the one commissioned by Mullen, that he would have to abide by the last official survey done, and the markers that had been installed. He continued to deny the survey, and stated that we were wrong, and that his property extended further than marked, and that he will continue to use it as his own. During this exchange, Sgt Scirrotto and myself were standing on the property marked by the survey as belonging to Mullen.

~~Macolino repeatedly got very close to Sgt Scirrotto and told him to get off his property, even though, according to the markers, Sgt Scirrotto was not on Macolino's property.~~ When Macolino stepped over the line himself, and was advised that he needed to stay on his own property or he may be cited for trespassing, he became defensive, and accused us of threatening him. He was advised numerous times to move back to his side of the property line, and refused to do so. After again claiming that the property was his, he was again advised that the most recent survey information provided to the Township said otherwise, and that he would need to prove that the survey commissioned by Mullen was incorrect. He responded that it was our duty to prove that it was correct in order to cite him for trespassing. He again would not accept that the survey was done by a legitimate surveyor and that Police would enforce the trespassing law based on that established property line. He then stood on Mullen's side of ~~the~~ <u>Mullen's survey</u> line ~~and taunted Police~~, asking what we were going to do.

He was advised that he would be charged for trespassing, since he was advised not only by Officers on the scene, including Sgt Scirrotto and myself, but also by "No Trespassing" signs that Mullen had posted along the property line on his side <u>of the survey line</u>. Macolino also complained about those signs, and stated that they were on his property, and that he would be removing them. He was advised that if he removed the signs, he would also be charged for criminal mischief. ~~Macolino continued to harass us as I attempted to inspect the marker on the Packard Ave side of the property. He pulled up the stake that was placed in the hole at the site of the marker, and put it on the ground. In the hole, I could still see what appeared to be the marker placed last year, which was painted orange, but now had a covering of dirt over it.~~

The next step is to determine whether the above corrected affidavit would have created probable cause to arrest Macolino. Macolino was arrested for defiant trespass, which is defined as: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by," among other things, "actual communication to the actor." 18 Pa. Con. Stat. § 3503(b)(1). Therefore, the reconstructed affidavit provides a sufficient basis for Macolino's arrest if it would have created probable cause to believe that:

9

(a) Macolino was not licensed or privileged to stand on Mullen's side of the concrete survey monuments;

(b) Macolino knew he was not licensed or privileged to do so;

(c) Notice against standing on Mullen's side of the survey monuments was given to Macolino by actual communication; and

(d) Macolino did stand on Mullen's side of the survey monuments.

Elements (c) and (d) are satisfied because the reconstructed warrant affidavit states, and Macolino admits, that McCoy warned Macolino to stay on Macolino's side of the survey monuments but Macolino stepped onto Mullen's side. The issue as to (a) is whether the reconstructed affidavit would have created probable cause to believe that the disputed portion of the yard belonged to Mullen. As to (b), the question is whether the corrected affidavit would have created probable cause to believe that Macolino was aware of Mullen's ownership.

Applying the summary judgment standard, both questions must be answered in the affirmative. As to (a), the undisputed facts compel the conclusion that the reconstructed affidavit would have created probable cause to believe that the disputed area belonged to Mullen. The opinion of a professional surveyor was "sufficient … to warrant a reasonable person to believe that" the boundary was where the survey said it was. Wilson, 212 F.3d at 789. While the boundary could still be in dispute, McCoy was aware of no facts that would lead him or the issuing magistrate to doubt the survey's accuracy. There was no competing survey and no allegation that Mullen's surveyor was not competent. Accordingly, no reasonable jury could find that it was unreasonable to believe the surveyor's determination.

As to (b), McCoy and the issuing magistrate could reasonably infer that Macolino, having been informed of Mullen's survey, was aware that the disputed strip belonged to Mullen. Thus, no reasonable jury could find that the reconstructed affidavit lacked probable cause as to Macolino's knowledge.

Feldman v. Community College of Allegheny, 83 F. Appx. 821 (3d Cir. 2004), is instructive. There, probable cause to arrest for defiant trespassing existed when officers were informed that the arrestee had been asked to leave a campus computer lab but refused to do so. Id. at 825. Although there was a dispute as to whether the arrestee had permission to use the lab, the police were not required to resolve the dispute before making an arrest. Id. at 825-26; see also Bailey v. Gibbons, No. 09-cv-4119, 2011 WL 4056202, at *9-10 (D.N.J. 2011) (officers had probable cause to arrest a trespasser after being shown a deed establishing ownership of the property and receiving no contrary documentation from the arrestee).

Analogously, while McCoy could not be certain that Mullen's survey was correct, McCoy was not required to resolve the dispute before arresting Macolino. McCoy's observation that Macolino stood in the area indicated in the survey as belonging to Mullen created probable cause to believe that Macolino was trespassing.

Finally, the history of the dispute between Macolino and Mullen is irrelevant to this conclusion. No element of the crime of defiant trespassing turns on whether the police had previously told Macolino that the boundary dispute was a "civil matter." All that is required is that Macolino knowingly stood on Mullen's property after having been told not to do so.

For the foregoing reasons, I will dismiss Macolino's § 1983 claim against McCoy.

B.     **State-Law Malicious Prosecution Claims Against McCoy and Mullen**

McCoy and Mullen each seek summary judgment on the state-law malicious prosecution claims against them. "Under Pennsylvania law, the elements of a malicious prosecution claim are that the defendant (1) instituted the proceedings (2) without probable cause with (3) actual malice and (4) that the proceedings terminated in favor of the plaintiff." Lippay v. Christos, 996 F.2d 1490 at 1502 (3d Cir. 1993).

For the reasons given above, the undisputed facts show that probable cause existed, as reflected in the reconstructed affidavit, to prosecute Macolino for defiant trespassing. This is true for both McCoy and Mullen, as both individuals were present when Macolino stepped over Mullen's survey line and witnessed him do so. I will therefore grant summary judgment as to these claims.

## IV.   CONCLUSION

For the reasons set out above, I will grant both Defendants' Motions for Summary Judgment.

An appropriate order follows.